IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KELVIN OWENS, | ) | CASE NO. 1:14 CV 421 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MICHELLE MILLER, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me[1] is the petition of Kelvin Owens for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Owens was convicted by a Cuyahoga County Court of Common Pleas jury in 2012 of one count of felonious assault,[3] and is serving a term of eight-years with five years mandatory post release control.[4]  He is currently incarcerated at the Grafton Reintegration Center in Grafton, Ohio.[5]

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Sara Lioi by non-document order dated December 5, 2014.

[2] ECF # 1; *see* 28 U.S.C. 2254 (2012).

[3] ECF #7-1 at 9.

[4] ECF #7-1 at 19.

[5] Ohio Department of Corrections: www.drc.ohio.gov/offendersearch.

Owens' raises three grounds for habeas relief.[6]   The State, in its return of the writ, contends that grounds one and two are without merit, and ground three is procedurally defaulted.[7]

For the reasons that follow, I will recommend that Owens' petition be dismissed in part and denied in part.

## Facts and Course of Proceedings

### A.    Underlying facts, conviction, and sentence

The relevant facts found by the Ohio appeals court emerge from its review of the record.[8]

Kelvin Owens dated Iris Butler ("Butler") for two years.[9]  At the end of July 2011, the couple ended their relationship, and Owens moved out of the home.[10] In spite of the break-up, Owens continued to call Butler.[11] On September 14, 2011, Butler was suffering from a backache and contacted her new boyfriend, Shawn Jones ("Jones"), to drop off a heating pad.[12]  Between 9:00 p.m. and 10:00 p.m., Jones came to Butler's home with a heating pad

---

[6] ECF # 1.

[7] ECF # 7 at 8 and 11.

[8] ECF 7-1 at 68.

[9] *Id.* at 70.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 71.

and slept on her couch until it was time for him to go to work.[13]  Around 2:00 a.m., he told Butler he was leaving, and she unlocked the door for him.[14]  At that point she retrieved her cell phone from her oldest son because she needed to set the alarm to wake up.[15] She noticed that Owens had made numerous calls and texted her once with the following: "Why?"[16]  She thought that this was unusual and looked out the window.[17] She observed Owens drive by in his car.[18]

Based on his conversation with Butler, Jones was aware that Owens had been harassing her.[19] While Jones was putting on his rain gear in preparation for riding his motorcycle in the rain, he saw Owens slowly drive by.[20] He had never seen Owens before, but assumed it was him based on what Butler had told him.[21] Jones contacted the police on his cell phone to report the suspicious car.[22] As Jones stood in the yard, Owens returned and

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

drove his car over the curb and up on the grass, straight at Jones.[23]  Jones jumped behind his motorcycle, then parked on the sidewalk.[24]  Owens put the car in reverse and again drove towards Jones.[25] This time, Jones who has a license to carry a gun, pulled out his gun and shot at the passenger side area of the car's windshield.[26] Owens then accelerated the car, hitting the motorcycle, which pinned Jones's leg to the ground.[27]

Owens then ran into the house and began kicking and punching Butler, until Butler's older son and Jones yelled at him to stop.[28] Seeing Jones, Owens ran into the basement.[29] As he ran into the basement, he turned toward Jones, who thought he saw Owens had something in his hand.[30] Jones shot Owens in the arm.[31]

Owens testified that he came to Butler's home at 2:00 a.m. because he knew she was not feeling well.[32] He was concerned because she had not answered calls.[33] He claimed that

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 72-73.

[27] *Id.* at 73.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

when he saw the motorcycle on the sidewalk and Jones on the front porch, he only approached him to see what was going on, not to hurt him.[34]

The jury found Owens guilty of one count of felonious assault and not guilty of the other counts.[35] The trial court sentenced Owens to eight years in prison and ordered him to compensate the victim $6,548 in property damage.[36]

**B.    Direct Appeal**

*1.    Ohio Court of Appeals*

Owens, *pro se*, filed a timely [37] notice of appeal[38] with the Ohio Court of Appeals. In his brief,[39] Owens raised the following three assignments of error:

    1.    The trial court erred by denying Appellant's request for the jury to be instructed on self defense.

    2.    The actions of defense counsel at trial deprived Owens of his right to the effective assistance of counsel, a fair trial, and due process of law.

    3.    Owens's conviction was against the weight of the evidence.

---

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37]   Under Ohio App. R. 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed.  See , *Smith v. Konteh*, No. 3:04CV7456,  2007 WL 171978, at *2 (N.D. Ohio Jan.18, 2007) (unreported case). Owens conviction and sentence were journalized on February 29,2012. *(Id.* at 10), and his appeal to the Ohio court of appeals was filed on March 29, 2012.

[38] *Id*. at 12.

[39] *Id.* at 21

The state filed a brief in response.[40] The Ohio Court of Appeals overruled Owens's assignments of error and affirmed the decision of the trial court.[41]

**2.      *Supreme Court of Ohio***

Owens, *pro se*, filed a timely notice of appeal[42] with the Ohio Supreme Court[43] appealing the December 13, 2012 journal entry.[44] In his memorandum in support of jurisdiction, he raised the following propositions of law:

1.      The court erred in denying Owens's request for the jury to be instructed on self defense.

2.      The actions of defense counsel at trial deprive[d][sic] Owens of his right to effective assistance of counsel, a fair trial, and due process of law.

3.      Owens's conviction was against the weight of the evidence.

The state filed a waiver of memorandum in response.[45] On March 27, 2013, the Ohio Supreme Court issued an entry declining to accept jurisdiction of the appeal.[46]

---

[40] *Id*. at 52.

[41] *Id.* at 68.

[42] *See* Ohio S.Ct.Prac.R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought.); *See*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day limit) (unreported case). Here, the appellate judgment was entered on December 13, 2012, and the notice of appeal filed in the Supreme Court on. January 28, 2013.

[43] *Id.* at 80.

[44] Id. at 68.

[45] *Id.* at 114.

[46] *Id*. at 115.

-6-

## C.    Federal habeas petition

On February 24, 2014, Owens, *pro se*, timely filed[47] a federal petition for habeas relief.[48]  In his petition, Owens raised the following grounds for relief:

GROUND ONE:    The court erred by denying Owens' request for the jury to be instructed on self defense.

Supporting Facts:    Defendant Owen's was entitled to the requested jury instructions on Self Defense that correctly states the law of Ohio R.C. 2901.09 (A)-(B).    Petitioner Owen's was denied his 14th Amendment to the United States rights of Due Process and Equal protection of the Laws of (Self Defense) under his Federal Constitutional rights.  Where Owens had a bonafide belief he was in imminent danger or great bodily harm.

GROUND TWO:    The actions of defense counsel at trial deprived Owens of his right to effective assistance of counsel, a fair trial, and due process of law.

Supporting Facts:    Defendant Owens counsel performance was deficient in trial and there exists a reasonable probability that for counsel errors the results would have been different.  Counsel has prejudice Owens and deprived him of his federal Constitution 5th, 6th, & 14th Amendment rights to effective assistance of counsel guaranteed under the United State Constitution and Art. I, sec.10 and sec. 16 of the Ohio Constitution rights.

GROUND THREE: Owens' conviction was against the weight of the evidence.

Supporting Facts:    In this federal appeal case, there was not enough evidence to prove the elements of the charged.  As to the defendant Owens

---

[47] The present petition for federal habeas relief was filed on February 24, 2014, ECF #1. As such, it was filed withing the one year conclusion of Owens' direct appeal in the Ohio courts and so it is timely under 28 U.S.C. § 2254(d)(1).

[48] ECF #1.

did not knowingly cause or attempt to cause physical harm; Owens was denied his Federal Constitution 14th Amendment Due Process and Equal Protection of the law rights to a conviction upon the Weight of the Evidence.

## Analysis

**A.    Preliminary observations**

Before proceeding further, I make the following preliminary observations:

1.    There is no dispute that Owens is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[49]

2.    There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute.[50]

3.    In addition, Owens states,[51] and my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[52]

4.    Moreover, subject to the procedural default arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[53]

---

[49] *See* 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[50] *See* 28 U.S.C. § 2254(d)(1); *Bronaugh*, 235 F.3d at 283-84.

[51] ECF # 1 at 3.

[52] *See* 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (2006).

[53] *See* 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

5.      Finally, Owens has not requested appointment of counsel,[54] nor has he requested an evidentiary hearing to develop the factual bases of his claims.[55]

## B.      Standards of review

### 1.      *Procedural default*

A claim not adjudicated on the merits by a state court is not subject to AEDPA review.[56]  Such a claim is subject to procedural default if a petitioner failed to raise it when state court remedies were still available, the petitioner violated a state procedural rule.[57]  The petitioner must afford the state courts "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[58]  This requires a petitioner to go through "one complete round" of the state's appellate review process,[59] presenting his or her claim to "*each appropriate state court.*"[60]  A petitioner may not seek habeas relief then if he or she does not first "fairly present[] the substance of his [or her] federal habeas corpus claim to the state courts."[61]

---

[54] *See* 28 U.S.C. § 2254(h); Rule 8(C) Rules Governing 2254 Cases.

[55] *See* 28 U.S.C. § 2254(e)(2).

[56] *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

[57] *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015).

[58] *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (citation omitted).

[59] *Boerckel*, 526 U.S. at 845.

[60] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (emphasis added).

[61] *West*, 790 F.3d at 697 (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971) (internal quotation marks omitted).

When a state asserts a that violation of a state procedural rule is the basis for default in a federal habeas proceeding, the Sixth Circuit has long employed a four-part to test determine whether the claim is procedurally defaulted.[62]  A petitioner's violation of a state procedural rule will bar federal review if the state procedural rule satisfies the standards set out in the test:[63]

(1) "[T]here must be a state procedure in place that the petitioner failed to follow."[64]

(2) "[T]he state court must have denied consideration of the petitioner's claim on the ground of the state procedural default."[65]

(3) "[T]he state procedural rule must be an 'adequate and independent state ground,'[66] that is both 'firmly established and regularly followed.'"[67]

(4) The petitioner cannot demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or "that failure to consider the claims will result in a fundamental miscarriage of justice."[68]

---

[62] *See Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986) (outlining four-part test); *see Landrum v. Mitchell*, 625 F.3d 905, 916-17 (6th Cir. 2010) (applying test post-AEDPA).

[63] *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008).

[64] *Id.* (citing *Maupin*, 785 F.2d at 138).

[65] *Id.* (citing *Maupin*, 785 F.2d at 138).

[66] *Id.* (quoting *Maupin*, 785 F.2d at 138). ("A state procedural rule is an independent ground when it does not rely on federal law.") (citing *Coleman v. Thompson*, 501 U.S. 722, 732).

[67] *Id.* (citation omitted).

[68] *Id.* (quoting *Coleman*, 501 U.S. at 750).

-10-

In order to show "cause" for the default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."[69]  In order to show "prejudice" for the default, the petitioner must show that the errors at trial "worked to [his or her] *actual* and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions."[70]

Additionally, "a credible showing of actual innocence" may also excuse an otherwise defaulted claim, and effectively allow a petitioner to seek review.[71]

Notwithstanding these elements, the Supreme Court has held that a federal habeas court need not consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[72]

## 2.     *AEDPA standard of review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[73], codified at 28 U.S.C. § 2254, strictly circumscribes a federal court's ability to grant a writ of habeas

---

[69]  *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[70]  *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

[71]  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013); *see Schulp v. Delo*, 513 U.S. 298, 324 (1995) (explaining that a "credible" claim requires "new reliable evidence" and factual innocence beyond legal insufficiency).

[72]  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *see Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015) ("[O]n occasion [the Sixth Circuit] has reached beyond the procedural-default analysis to address the underlying claim on the merits when it presents a more straightforward ground for decision.") (citation omitted).

[73]  Pub. L. No. 104-132, 110 Stat. 1214 (1996).

corpus.[74]  Pursuant to AEDPA, a federal court shall not grant a habeas petition with respect to any claim adjudicated on the merits in state court unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.[75]

The Supreme Court teaches that this standard for review is indeed both "highly deferential" to state court determinations,[76] and  "difficult to meet,"[77] thus, preventing petitioner and federal court alike "from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."[78]

*a.*     *"Contrary to" or "unreasonable application of" clearly established federal law*

Under § 2254(d)(1), "clearly established Federal law" includes only Supreme Court holdings and does not include dicta.[79]  In this context, there are two ways that a state court

---

[74]  *See* 28 U.S.C. § 2254 (2012).

[75]  28 U.S.C. § 2254(d) (2012).

[76]  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

[77]  *Id.* (citation omitted).

[78]  *Rencio v. Lett*, 559 U.S. 766, 779 (2010).

[79]  *Howes v. Fields*, 132 S.Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

-12-

decision can be "contrary to" clearly established federal law:[80] (1) in circumstances where the state court applies a rule that contradicts the governing law set forth in a Supreme Court case,[81] or (2) where the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but nonetheless arrives at a different result.[82] A state court's decision does not rise to the level of being "contrary to" clearly established federal law simply because that court did not cite the Supreme Court.[83] The state court need not even be aware of the relevant Supreme Court precedent, so long as neither its reasoning nor its result contradicts it.[84] Under the "contrary to" clause, if materially indistinguishable facts confront the state court, and it nevertheless decides the case differently than the Supreme Court has previously, a writ will issue.[85] When no such Supreme Court holding exists the federal habeas court must deny the petition.

A state court decision constitutes an "unreasonable application" of clearly established federal law when it correctly identifies the governing legal rule, but applies it unreasonably to the facts of the petitioner's case.[86] Whether the state court unreasonably applied the

---

[80] *Brumfield v. Cain*, 135 S.Ct. 2269, 2293 (2015).

[81] *Id.*

[82] *Id.*

[83] *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).

[84] *Id.*

[85] *See id.*

[86] *White v. Woodall*, 134 S.Ct. 1697, 1699 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

-13-

governing legal principle from a Supreme Court decision turns on whether the state court's application was objectively unreasonable.[87] A state court's application that is "merely wrong," even in the case of clear error, is insufficient.[88] To show that a state court decision is an unreasonable application, a petitioner must show that the state court ruling on the claim being presented to the federal court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[89] Under the "unreasonable application" clause, the federal habeas court must grant the writ if the State court adopted the correct governing legal principle from a Supreme Court decision, but unreasonably applied that principle to the facts of the petitioner's case.

b.    *"Unreasonable determination" of the facts.*

The Supreme Court has recognized that § 2254(d)(2) demands that a federal habeas court accord the state trial courts substantial deference:[90] Under § 2254(e)(1), "a determination of a factual issue made by a [s]tate court shall be presumed to be correct."[91] A federal court may not characterize a state court factual determination as unreasonable "merely because [it] would have reached a different conclusion in the first instance."[92] While

---

[87] *Id.*(quoting *Lockyear v. Andrade*, 538 U.S. 63, 75-76. (2003).

[88] *Id.*

[89] *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

[90] *Brumfield*, 135 S.Ct. at 2277.

[91] 28 U.S.C. § 2254(e)(1) (2012).

[92] *Brumfield*, 135 S.Ct. at 2277 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010).

such deference to state court determinations does not amount to an "abandonment or abdication of judicial review"or "by definition preclude relief,"[93] it is indeed a difficult standard to meet.  "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judges."[94]

### 3.    *Sufficiency of the evidence*

Despite the general prohibition against federal habeas corpus review of issues of state law,[95]  a claim that a petitioner was convicted with insufficient evidence is cognizable under 28 U.S.C. § 2254[96]  because the Due Process Clause of the Fourteenth Amendment "forbids a State from convicting a person of a crime without proving the elements of that crime beyond a reasonable doubt."[97]

In that regard, the United States Supreme Court teaches that substantial evidence supports a conviction if, after viewing the evidence in the light most favorable to the prosecution, the reviewing court can conclude that any rational trier of fact could have found

---

[93] *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.") (internal quotation marks omitted)).

[94] *Davis v. Ayala*, 135 S.Ct. 2187, 2202 (2015) (citation omitted).

[95] *See*, *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[96] *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006).

[97] *Fiore v. White*, 531 U.S. 225, 228-29 (2001).

the essential elements of the crime proved beyond a reasonable doubt.[98] This standard does not permit the federal habeas court to make its own *de novo* determination of guilt or innocence; rather, it gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to the ultimate fact.[99]

Moreover, in addressing an argument about the sufficiency of the evidence, it must be remembered that an attack on the credibility of a witness is simply a challenge to the quality of the prosecution's evidence, and not to its sufficiency.[100] Further, as the Sixth Circuit has stated, the review for sufficiency of the evidence must be viewed as containing two levels of deference toward the state decision: first, the deference set forth in *Jackson*, whereby the evidence is to be viewed most favorably to the prosecution, and next, "even if [the court] to conclude that a rational trier of fact could not have found the petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as that is not unreasonable."[101]

---

[98] *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

[99] *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

[100] *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).

[101] *Moreland v. Bradshaw*, 699 F.3d 908, 916-17 (6th Cir. 2012) (citations omitted).

### 4.     *Ineffective assistance of counsel*

In *Higgins v. Renico*,[102]  the Sixth Circuit re-stated the foundational rubric for reviewing claims of ineffective assistance of counsel pursuant to the long-standing teaching of *Strickland v. Washington*:[103]

> Under *Strickland*, a defendant must establish both that his counsel's performance was seriously deficient and also that he suffered prejudice as a result of such deficiency.[104]

The *Higgins* court then proceeded to discuss the applicable standards for evaluating each prong of the *Strickland* test.  It explained seriously deficient performance in the following terms:

> When complaining of his counsel's deficient performance, a convicted defendant must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms."  A reviewing court must judge the reasonableness of counsel's actions on the facts of the defendant's case, viewed from counsel's perspective at the time, recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  In essence, a defendant has the burden of proving by a preponderance of the evidence, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
>
> "Because advocacy is an art not a science, ... [counsel's] strategic choices must be respected" if they were made after a

---

[102] *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006).

[103] *Strickland v. Washington*, 466 U.S. 668 (1984).

[104] *Higgins*, 470 F.3d at 631.

thorough investigation of the law and facts relevant to possible options." Such choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference. Indeed, such strategic choices are virtually unchallengeable. As explained by the Supreme Court:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Thus, counsel cannot be adjudged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy."[105]

The clearly established federal law of establishing prejudice from deficient performance of counsel was stated by the *Higgins* court as follows:

> Even where counsel's performance is deficient, a petitioner is not entitled to habeas relief unless he also

---

[105] *Id.* at 631-32 (internal citations omitted).

-18-

demonstrates ensuing prejudice.  In evaluating the prejudice suffered by a defendant as a result of his counsel's deficient performance, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings."  Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Although the defendant need not prove that counsel's deficient conduct more likely than not affected the verdict, the defendant must show that "absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt."  "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."  In this vein, the court must determine whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."

Whether an error actually prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury."  A verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."[106]

Moreover, it is well-settled that a federal habeas court may, as an initial inquiry, consider either the alleged deficiency itself or the claim of prejudice resulting from such deficiency since establishing both prongs is required to grant the writ.[107]

## C.    Application of standards

### 1.    *Ground one - alleging a failure to give a jury instruction on self-defense - should be dismissed as non-cognizable.*

---

[106] *Id.* at 633-34 (internal citations and parenthetical comments omitted).

[107] *Id.* at 631 n.3.

In the state court decision denying this claim, the Ohio appeals court evaluated Owens' argument purely as a question of state law, and found that under Ohio law Owens had not proven an entitlement to a self-defense instruction. Specifically, Ohio law permits such an instruction only if, inter alia, the defendant did not violate any duty to retreat or avoid danger.[108] Here, the court noted that the physical evidence, in the form of tire tracks on the lawn, showed that Owens had driven his car towards Jones twice after missing him the first time, Owens put his car in reverse and drove toward Owens a second time.[109] Thus, the Ohio court concluded, because the physical evidence precluded a finding that Owens had retreated or avoided any danger posed by Jones, Owens was not entitled to an instruction on self-defense under Ohio law.[110]

The Sixth Circuit teaches that in non-capital cases, such as this one, the failure to instruct on a lesser included offense does not implicate any federal constitutional right since generally it is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[111] *Bagby* does postulate that it is "conceivable" that a "fundamental miscarriage of justice" may result from an "arbitrary and unsupportable denial of a lesser included offense instruction in clear

---

[108] ECF # 7, Attachment at 15 (citations omitted).

[109] *Id.*

[110] *Id.*

[111] *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990)(*en banc*), *cert. denied*, 490 U.S. 929 (1990).

defiance of state law."[112] But, as was noted in *Talley v. Hageman*,[113] the exception cited by *Bagby* relates to a "fundamental miscarriage of justice likely to have resulted in the conviction of an innocent person."[114]

Here, Owens does not argue he is "actually innocent" of causing Jones' injuries, but merely that was legally guilty on a lesser charge; that he "had a bonafide belief he was in imminent danger of great bodily harm" from Jones when he caused Jones' injury.[115] As such, there is no implication of a fundamental miscarriage of justice in this case, and the denial of a lesser included offense on state law grounds is not "inconsistent with the rudimentary demands of fair procedure."[116]

Accordingly, ground one should be dismissed as a non-cognizable state law claim.

**2.  *Ground three - that the conviction was against the manifest weight of the evidence - should be dismissed as a non-cognizable state law claim. Alternatively, if understood as a claim based on sufficiency of the evidence, it should be denied after AEDPA review because the Ohio court decision was not contrary to the clearly established law of Jackson v. Virginia.*[117]**

A conviction is against the manifest weight of the evidence does not raise a federal constitutional issue cognizable in a habeas proceeding. A claim, asking the reviewing court

---

[112] *Id.* at 795.

[113] *Talley v. Hageman*, 619 F.Supp.2d 407 (N.D. Ohio 2008).

[114] *Id.* at 413 (citing *Bagby*, 894 F.2d at 795 (citations omitted)).

[115] ECF # 1 at 4.

[116] *Bagby*, 894 F.2d at 795.

[117] *Jackson v. Virginia*, 443 U.S. 307 (1979).

to re-weigh the evidence as a "thirteenth juror" is both quantitatively and qualitatively different from a claim that asserts that the conviction was not supported by sufficient evidence, and so raises only a state law issue that is not cognizable here.[118]

But, in *Nash v. Eberlin,* the Sixth Circuit held that where a manifest weight claim was adjudicated by the Ohio courts, such a decision necessarily includes a finding that the conviction was supported by sufficient evidence.[119] Thus, a federal habeas court may properly consider a sufficiency of the evidence claim presented in a petition for habeas relief as being the same claim as a manifest weight claim presented to the Ohio courts.[120]

Here, Owens states his claim for relief in ground three in terms that "there was not enough evidence to prove the elements of the charged [offense]."[121] Thus, like *Nash*, Owens has now stated a federal sufficiency of the evidence claim and, based on *Nash*, the current claim should be reviewed because the state court adjudication of Owens' prior manifest weight claim necessarily included a finding that the conviction was supported by sufficient evidence.

Owens was convicted on one count of felonious assault. Owens was charged with felonious assault, which under Ohio law requires proof that the defendant "knowingly ...

---

[118] *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982).

[119] *Nash v. Eberlin,* 258 Fed. Appx. 761, 765 (6th Cir. 2007).

[120] *Id.*

[121] ECF # 1 at 7.

cause or attempt to cause serious physical harm to another ....."[122] The Ohio appeals court discussed the evidence in that regard as follows:

> {¶ 26} Owens also contends that he did not have the intent to harm Jones with his car, but merely driving his car towards Jones to confront him. He argues that it was not until Jones shot at him that he ran into him with the car, and that even Jones admitted that Owens did not hit him with the car until after Jones fired the gun. However, Jones and Butler both testified that Owens came at Jones twice with the car, and the photograph depicting the other set of tire tracks beside the car on the lawn supports their testimony. Moreover, Owens drove over the curb and up onto the grass with his car, instead of parking in the driveway, which indicates an intent other than questioning Jones * * *.[123]

Mindful that both the jury verdict here and the decision of the Ohio appeals court are each entitled to deference from a federal habeas court considering a sufficiency of the evidence claim,[124] The Ohio appellate court decision denying this claim is not contrary to the clearly established federal law of *Jackson*. Considering all the evidence in the light most favorable to the prosecution, including all reasonable inferences from that evidence, that Owens was driving toward Jones prior to Jones firing his gun, and that Owens came at Jones twice (as noted earlier, Owens backed up and drive toward Jones a second time after he failed to hit him the first time), support the conclusion that Owens conviction for felonious assault was supported by sufficient evidence.

3. ***Ground two - ineffective assistance of trial counsel - should be denied on the merits after AEDPA review because the decision of the Ohio appeals court on this claim was not an unreasonable application of the clearly established federal law of Strickland v. Washington.[125]***

---

[122] Ohio Rev. Code §2903.11(A)(2).

[123] ECF # 7, Attachment at 78.

[124] *Coleman v. Johnson,* __ U.S. __, 132 S.Ct. 2060, 2062 (2012).

[125] *Strickland v. Washington,* 466 U.S. 668 (1984).

Owens contends that his trial counsel was ineffective for not requesting a lesser included offense instruction on aggravated assault and for not asking that the jury disregard a reference by Butler to Owens as a "stalker." The Ohio appeals court addressed the claim as follows:

> {¶16} Owens argues that his counsel was ineffective for failing to request a jury instruction on the lesser included offense of aggravated assault.  He contends he did not ram the motorcycle until after Jones shot at his windshield, which would provide the provocation needed for an instruction on aggravated assault.
>
> {¶17} Counsel was not ineffective for failing to request an aggravated assault charge.  The decision to request a jury instruction for a lesser included offense constitutes trial strategy and does not provide a basis for claiming ineffective assistance of counsel.  *State v. Griffie*, 74 Ohio St.3d 332, 333, 1996-Ohio-71, 658 N.E.2d 764; *State v. Murphy*, 8th  Dist. No. 95705, 2012-Ohio-1186; *State v. Caldwell*, 8th Dist. No. 80556, 2002-Ohio-4911.
>
> {¶18} Additionally, Owens testified that he was afraid at the time the shot was fired.  Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute a sudden passion or fit of rage required for an aggravated assault charge.  *State v. Mack*, 82 Ohio St.3d 198, 201, 1998-Ohio-375, 694 N.E.2d 1328.
>
> {¶19} Owens also argues counsel was ineffective because during the cross examination of Butler, Butler testified that Owens called her so often that her sons called him a "stalker."  Owens's counsel never requested that the statement be stricken nor did he request that the jury be advised not to consider the response.   Counsel could not have anticipated that Butler's response to his question regarding what Butler did in terms of breaking off the relationship slowly would be that her sons thought Owens was a stalker.  Nor do we find counsel was ineffective for failing to request that the statement be stricken or a curative instruction be issued by the trial court because counsel could have determined that this would have the result of

-24-

> calling attention to the statement.  Strategic decisions by defense counsel, including the decision not to object to certain testimony, fall within the realm of trial tactics and do not establish ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103; *State v. Bedford*, 9th Dist. Nos. 25048 and 25066, 2010-Ohio-3577, ¶ 29.
>
> {¶20} Additionally, this statement did not effect the outcome of the trial as Butler testified regarding the fact that Owens called her excessively * * *. [126]

As is apparent from the forgoing discussion, the Ohio appeals court correctly identified the clearly established federal law applicable to this claim, and then, after a comprehensive analysis of each component of Owens' claim, determined that the claim should be denied.

Counsel cannot be ineffective for failing to request an instruction when such a request would have been denied. Further, as the Ohio court observed, to the degree either challenged action concerns a matter of trial strategy, the reviewing court must strongly presume that the action falls within the wide range of reasonable professional assistance that might be considered sound trial strategy.[127] This is especially true as to the single reference by Butler to Owens as a stalker. As the Ohio court noted, defense counsel frequently decide not to object to certain testimony, or refrain from asking for a limiting instruction, so as not to unduly call the jury's attention to such testimony.

---

[126] ECF # 7, Attachment at 74-76.

[127] *Strickland*, 466 U.S. at 689.

-25-

Ground two should be denied on the merits because the Ohio court decision on this claim was not an unreasonable application of the clearly established federal law of *Strickland*.

## Conclusion

For the foregoing reasons, I recommend that the petition of Kelvin Owens for a writ of habeas corpus be dismissed in part and denied in part as is more fully set forth above.

Dated: February 1, 2016                              s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[128]

---

[128] *See Thomas v. Arn*, 474 U.S. 140 (1985); *see*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-26-